Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)

**FILED**

Dec 18 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ RodrigoContreras _____ DEPUTY

Plaintiff pro se

## UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Anton A. Ewing,

      Plaintiff,

vs.

CAST CAPITAL LENDING CORP,

      Defendants.

Case No.: **'23 CV 2299 JAH JLB**

**COMPLAINT**
**1. 47 U.S.C. §227 (TCPA)**
**2. PC §637.2 / 632.7 (CIPA)**
**3. CIVIL CODE §1770(A)(22)(A)**

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this civil

Complaint for money damages and injunctive relief, demanding a trial by jury,

against Defendant CAST CAPITAL LENDING CORP (doing business as "Cast

Capital Funding)[1], to stop said defendant from violating the Telephone Consumer

_____

[1] Plaintiff hereby puts Boris Leybel and Vadim Leybel on notice that they are going to be named as a defendant as soon as discovery establishes a goodfaith belief that they are vicariously liable. Please review the Uniform Fraudulent Transfer Act.
COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 1

Protection Act and the Telemarketing Sales Rule by sending telemarketing text messages and calling with prerecorded artificial voice messages to Plaintiff's personal residential cellular phone (ending in -9640), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff.   Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, including investigation conducted by Plaintiff[2].  Plaintiff is suing to stop Defendant's practice of sending text messages and callings using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county without their prior express consent by obtaining an injunction prohibiting violation of the TCPA; (2) stop Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by Defendant's conduct.

---

[2] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 2

23cv

## PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[3].

2. Plaintiff has been repeatedly <u>called</u> and <u>texted</u> by CAST CAPITAL LENDING CORP, directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant to stop all future calls and texts.

3. Defendant CAST CAPITAL LENDING CORP is a New Jersey corporation that conducts business throughout this District, in San Diego, California. Defendant CAST CAPITAL LENDING CORP is a "person" as defined by 47 USC §153(39). Defendant is in the business of selling debt consolidation services through an attorney. Defendant uses the wires of the United States to harass and annoy DNC registered telephone owners with their solicitation

---

[3] For clarity, this number is not a hardwired landline. This number is cellular phone. No cause of action under PC §632 is alleged. Arguing that cellular calls require "confidential communications" is frivolous.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 3

23cv

calls to sell sham merchant cash advance services to unsuspecting victims in California.

4. Defendant CAST CAPITAL LENDING CORP is located in New Jersey. Plaintiff is only suing CAST CAPITAL LENDING CORP and no other persons or parties, named or unnamed, whether as Does or otherwise. Defendant's attorneys should not be confused here.  Plaintiff repeats himself again, there is only <u>One (1)</u> defendant named in this civil lawsuit and Plaintiff is specifically alleging that Defendant directly engaged in the illegal and offending conduct.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").  This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

6. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

7. The Honorable District Judge William Q. Hayes, on 9/22/2022, in *Ewing vs. CSolar*, 22cv00720-WQH, at ECF No. 8, entered an order granting Plaintiff's motion for default judgment, imposing $11,000 against CSolar. Importantly, the Complaint in that case is **substantially similar** to this Complaint, the only real differences being the names of the defendants, the dates, times and telephone numbers called from and the fact that CSolar was selling solar panels while Defendant CAST CAPITAL LENDING CORP is selling debt reduction services.  Since this Court was able to find that all the elements of the TCPA causes of action were well-plead, that renders any motion to dismiss this Complaint frivolous, harassing and solely for the purpose of delay, a violation of 28 USC §1927.  Plaintiff's Complaint was able to be read, understood and ruled upon in Plaintiff's favor in the CSolar case by the Honorable Judge Houston.  Defendant cannot credibly argue that the Complaint in *Ewing vs. CAST CAPITAL LENDING CORP* is so bad that it must be dismissed when in fact Judge Houston was able to figure it out rather cogently.   Judge Houston's analysis should be read by Defendant's attorneys to assist them.

8. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 5

23cv

phone recording, Civil Code §1770(a)(22)(A)- illegal prerecorded voice message to a cell phone without consent and without a prior live operator introduction.

9. Defendant CAST CAPITAL LENDING CORP has purposefully directed its activities into California and has knowingly, intentionally and willfully recorded its conversations with Plaintiff without disclosing the fact of recording at the beginning of the calls. Area code 619 is entirely within San Diego County.

## INTRODUCTION

10. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020). Plaintiff is also doing his job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits.

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone

solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  Plaintiff has done registered his phone.

12.  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

14. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

15. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

16. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

17. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com.  Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit

repair, student loan assistance, and merchant cash advances to name just a few. This must stop.

18. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data. It is unfortunate that making a complaint to the FCC actually results in nothing being done. The FCC simply does not have the resources to go after telemarketers.

19. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[4]

20. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[5]

---

[4] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[5] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 8

21.  In recent years a troubling trend has surfaced in the merchant cash advance industry, cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

22. This merchant cash advance telemarketing trend has resulted in consumers, including this Plaintiff, being bombarded by unsolicited solicitation calls without their (or his) consent and in violation of the TCPA, in violation of CIPA, and Civil §1770.

23. The initial part of the call was a prerecorded voice, then some time past, and then Defendant's employee "Shane Himmelman" admitted to Plaintiff, at the end of the 12/18/2022 telemarketing call, when asked by Plaintiff, that Defendant does in fact record all of its solicitation calls.  Shane Himmelman transferred the call to another male person who attempted to justify the illegal act of recording by adding that they record for "training and quality control purposes" but that additional fact is not an excuse for violating CIPA.  Any and all calls into California must disclose, at the beginning of the call, that said call is being recorded.  Waiting until the very end of the call to admit, when asked, that it was recorded is too late.  Liability for recording attaches when there is a call, to a cellular phone, where there is a reasonable expectation of privacy and disclosure of the fact of recording

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 9

23cv

does not occur at or near the beginning of said call. Cellular phones do not require confidential private information to be exchanged to be protected by CIPA.

24. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

25. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

26. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

29. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

30. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

31. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

32. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

33. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014)

(Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

34. Defendant CAST CAPITAL LENDING CORP is a loan and merchant cash advance firm run by Vadim Leybel, selling its services throughout San Diego County.

35. Defendant CAST CAPITAL LENDING CORP which conducts business using the assumed name "Cast Capital Funding" owns and operates the website, www.castcapitalfunding.com.

36. Defendant CAST CAPITAL LENDING CORP conducts telemarketing campaigns to sell its services to consumers throughout southern California. As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by Defendant CAST CAPITAL LENDING CORP.   Plaintiff can assert and allege this detailed fact because Defendant's employee, Shane Himmelman, expressly admitted it.

37. In placing unsolicited text messages to consumers, Defendant CAST CAPITAL LENDING CORP sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

23cv

38. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant CAST CAPITAL LENDING CORP to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($402 filing fee plus service of process fees).  The text messages were generic in nature and did not address Plaintiff by name.  The text message did not offer a way to opt out or to stop future solicitation texts.

39. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call.  Plaintiff was required to hit "1" to be transferred to a live operator.  This happened on each and every call that is the subject of this lawsuit.  Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used.  However, the Defendant fails to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant did in fact use, an artificial pre-recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant.  Additionally, the text messages were sent via a "short code" and not a full ten-digit telephone number.  This further indicates that an ATDS must have been used to blast out the spam text messages.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 14

23cv

40. Plaintiff and Defendant do not have a pre-existing business relationship. Plaintiff has never been a customer or client of Defendant's business. Moreover, Plaintiff does not even have any debt and thus could not possibly have a need for Defendant's debt reduction services.

41. Specifically, the hardware and software used by Defendant CAST CAPITAL LENDING CORP has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by Defendant for the calls and the use of the short code is highly indicative of an ATDS.

42. The text messages were sent by Defendant with its knowledge and approval of the CEO of Defendant. Defendant CAST CAPITAL LENDING CORP knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its

employees using Defendant's computers and software. The text messages were generic which indicates an ATDS was used by Defendant.

43. All of the text messages were sent via an ATDS at the direction and oversight of Defendant CAST CAPITAL LENDING CORP. Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

44. Based on Plaintiff's vast knowledge and experience with these types of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list or a self-generated list within the device itself for texting at a later date.[6] Plaintiff alleges that this is exactly what Defendant CAST CAPITAL LENDING CORP has done.

45. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, employing a short code, has the capacity to generate random or sequential telephone numbers. One of Defendant's

---

[6] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
16

employees, Shane Himmelman, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their loan programs. Defendant earns and gets paid a commission for each loan they sell.

46. By sending unsolicited text messages as alleged herein, Defendant CAST CAPITAL LENDING CORP has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of his telephone plan. Furthermore, Defendant CAST CAPITAL LENDING CORP sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

47. FCC regulations promulgated under the TCPA specifically prohibit Defendant from using an artificial or prerecorded voice to call Plaintiff's

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
17

Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[7]

## PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST DEFENDANT CAST CAPITAL LENDING CORP.

48. Defendant CAST CAPITAL LENDING CORP called or texted Plaintiff Ewing, on his DNC registered personal cell phone, 619-719-9640, on the following dates:

    a. December 18, 2023 from 619-864-7176 at 9:44 AM -- Call

    b. November 28, 2023 from 619-864-7176 at 9:09 AM – Call

    c. November 27, 2023 from 619-864-7176 at 10:30 AM—Call

    d. November 21, 2023 from 915-206-2805 at 19:26 AM—Call

    e. November 20, 2023 from 915-206-2805 at 3:45 PM—Call

    f. November 14, 2023 from 915-206-2805 at 9:50 AM—Call

    g. November 17, 2023 from 915-206-3940 at 1:28 PM—Call

    h. November 15, 2023 from 915-206-3940 at 11:45 AM—Call

    i. November 14, 2023 from 915-206-3940 at 2:21 PM—Call

    j. November 9, 2023 from 915-206-1884 at 1:28 PM—Call

---

[7] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions*.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
18

k. November 8, 2023 from 915-206-1884 at 8:30 AM—Call

l. November 30, 2023 from 619-864-7176 at 10:12 AM—Text

m. December 1, 2023 from 915-206-7896 at 8:22 AM—Text

49. The above dates, times, from what number and to what number is all the detail that is required under the TCPA. Nothing else is necessary at the initial pleading stage. *See* Rule 8 and Rule 10, FRCP. The Court is also respectfully requested to see each footnote and the cases that Plaintiff has cited from. While this Complaint was written by a pro per litigant, it was effectively lifted from TCPA complaints drafted by TCPA plaintiff lawyers.

50. There were, thus far, 11 calls (($1,500 + $1,500 +$5,000) *11 = $88,000)) and 2 text messages ($1500 + $1500 times 2 = $6,000) from Defendant CAST CAPITAL LENDING CORP.

51. Defendant's employee Shane Himmelman admitted to Plaintiff that he did not dial Plaintiff's phone number by finger, but rather using a computer software that stores and automatically dials the phone numbers without any input from him. "Shane Himmelman" stated that once a person hit's "1" then the software connects or transfers the call to either him or another telemarketer in the office.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 19

23cv

52. Replying "STOP" did not work. Plaintiff received additional subsequent text messages from Defendant CAST CAPITAL LENDING CORP. Importantly, Plaintiff became enraged on each telephone call making very clear that the caller must never telemarket him ever again. And yet, Defendant CAST CAPITAL LENDING CORP keeps calling and texting to solicit Plaintiff after being told to stop.

53. Spoofing the prefix of 719, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to attempt to increase the likelihood that a called person will answer the call. Fortunately, since the STIR/Shaken[8] laws were made effective, this scam is now significantly attenuated but it is not stopping by any stretch of the imagination.

54. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Could you use a reduction or elimination of your debts?  Press one to be connected to one of our specialist attorneys*" or similar words to that affect. The TCPA

---

[8] https://www.fcc.gov/call-authentication

and CLRA do not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

55. Defendant CAST CAPITAL LENDING CORP was calling to sell its loan brokering services to Plaintiff who was in California at the time.

56. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued. Moreover, Plaintiff has expressly informed over one hundred TCPA defense attorneys, in writing, across the nation to inform their clients to not call Ewing for solicitation. At the bottom of each email Plaintiff also has the following warning which he has sent to thousands of persons:

   a. "This email does not authorize you to call me for SOLICITATION. This email is not consent to TELEMARKET my phone number. Any calls without express authorized consent shall be treated as a violation of 47 USC §227."

57. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only. Notwithstanding, mixed use phones are still fully protected.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 21

23cv

58. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant's services.

59. The text messages were sent by Defendant CAST CAPITAL LENDING CORP.  The text messages were sent at Defendant CAST CAPITAL LENDING CORP's direction, command and control, that is, Defendant ordered each of its employees to respond to the calls that it made after it sent out the automatic solicitations.

60. Defendant CAST CAPITAL LENDING CORP expressly and overtly controlled the exact generic content of the text messages.

61. The text messages, unlike the emails, did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

62. Said dialing system has the capacity to store and randomly generate phone numbers and to dial those numbers without human intervention.

63. Plaintiff Ewing never provided his phone number or his consent to Defendant CAST CAPITAL LENDING CORP to receive any solicitation from them or on their behalf.  Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant CAST CAPITAL LENDING CORP.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 22

23cv

64. The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

65. Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR. *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

66. The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more instance during these calls, Defendant CAST CAPITAL LENDING CORP utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

67. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 23

68. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

69. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to Defendant CAST CAPITAL LENDING CORP for any purpose whatsoever. In addition, Plaintiff told Defendant CAST CAPITAL LENDING CORP at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant CAST CAPITAL LENDING CORP contacting him.  Accordingly, Defendant CAST CAPITAL LENDING CORP never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[9]

70. Plaintiff did not have a personal relationship with Defendant CAST CAPITAL LENDING CORP at any point in time.[10]

_____

[9] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[10] 21-cv-01123
COMPLAINT    1. 47 U.S.C. §227 (TCPA)    2. PC §637.2 / 632.7 (CIPA)    3. CIVIL CODE §1770(A)(22)(A) - 24

23cv

71. Defendant CAST CAPITAL LENDING CORP did not make the telephone solicitations in error.

72. When Plaintiff answered calls from Defendant CAST CAPITAL LENDING CORP, he heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

73. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

74. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

75. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

76. Plaintiff has never done business with Defendant or any of its employees.

77. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

78. The Complaint alleges 11 of the 13 telephone calls violated of CLRA – Cal. Civ. Code §1770(a)(22)(A), but not the text messages sent without consent. Since Plaintiff demanded that Defendant stop calling at the end of the first call, then Plaintiff asserts a CLRA violation on 11 of the calls alleged herein.

79. Billions of illegal and harassing telemarketing calls are made to Americans each month. But for people like Plaintiff, it would be tens of billions of illegal and harassing telemarketing calls. Parasitic criminal organizations like Defendant need to be put out of business in order to stop this infection called telemarketing. Most Americans receive more spam texts and more telemarketing calls than they do communications from friends and family.

80. Defendant CAST CAPITAL LENDING CORP, through its employee Shane Himmelman and others, called Plaintiff to sell its loan products. The calls were not placed by an unknown third party. Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)    2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 26

23cv

81. Since Plaintiff registered his personal private cellular phone, 619-719-9640, on www.donotcall.gov more than 31 days prior to the first call and the first text from Defendant, then Defendant's failure to scrub their calling lists against the DNC is a violation of 27 USC §227(c).

82. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff damages, including statutory damages, which have been held to be sufficient damage and sufficient injury to pass Article III standing.

83. Defendant called Plaintiff's cellular telephone number, using an automatic telephone dialing system with a prerecorded artificial voice message introduction, without Plaintiff's prior express written consent, by robo-dialing Plaintiff's DNC registered phone number, devoid of any pre-existing or established business relationship. Further, Defendant continued to seriously and substantially harass and annoy Plaintiff after Defendant was expressly and explicitly told to cease and desist. Defendant would not know concrete injury even if it were hit by a ton of concrete bricks.

84. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act

COMPLAINT  1. 47 U.S.C. §227 (TCPA)  2. PC §637.2 / 632.7 (CIPA)  3. CIVIL CODE §1770(A)(22)(A) - 27

23cv

## (Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))
## (Against Defendant CAST CAPITAL LENDING CORP)

85. Plaintiff Ewing repeats and realleges paragraphs 1 through 84 of this Complaint and incorporates them by reference.

86. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

87. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

88. Defendant CAST CAPITAL LENDING CORP violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry

COMPLAINT   1. 47 U.S.C. §227 (TCPA)    2. PC §637.2 / 632.7 (CIPA)    3. CIVIL CODE §1770(A)(22)(A) - 28

participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

89. Defendant CAST CAPITAL LENDING CORP violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant CAST CAPITAL LENDING CORP in violation of 47 C.F.R. § 64.1200, as described above.

90. Defendant CAST CAPITAL LENDING CORP failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

   (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

   (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

91. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

92. Defendant CAST CAPITAL LENDING CORP used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

93. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant CAST CAPITAL LENDING CORP violated 47 U.S.C. § 227(b)(1)(A)(iii).

94. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

95. Defendant CAST CAPITAL LENDING CORP. violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

96. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and*

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 30

*Regulations Implementing the Telephone Consumer Protection Act of 1991*.'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

97. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be

contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

98. Here, Defendant CAST CAPITAL LENDING CORP sent Plaintiff Ewing multiple unsolicited text messages after he had submitted valid "STOP" and "BYE" requests.

99. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages,

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 33

23cv

for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## SECOND CLAIM FOR RELIEF
### Consumer Information Privacy Act
### (Violation of CA Penal Code §632.7 and §637.2)
### (Against Defendant CAST CAPITAL LENDING CORP)

100.    Plaintiff Ewing repeats and realleges paragraphs 1 through 84 of this Complaint and incorporates them by reference.

101.    The foregoing acts and omissions of Defendant CAST CAPITAL LENDING CORP constitute numerous and multiple knowing and/or willful violations of California's Invasion of Privacy Act.  There is no claim for any PC §632 land-line violation in the lawsuit.

102.    As a result of Defendant's knowing and/or willful violations of PC §632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per call that was illegally recorded without Plaintiff's knowledge or consent.

103.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## THIRD CLAIM FOR RELIEF
### Consumer Legal Remedies Act
### (Violation of CA Civil Code §1770(a)(22)(A))
### (Against Defendant CAST CAPITAL LENDING CORP)

104.    Plaintiff Ewing repeats and realleges paragraphs 1 through 84 of this Complaint and incorporates them by reference.

105.    Defendant CAST CAPITAL LENDING CORP used and employed an artificial voice, prerecorded message, without consent or permission in advance, to initiate each call to Plaintiff.  Defendant was not selling loans or mortgages.

106.    Plaintiff suffered harm by Defendant's violation of California Civil Code §1770(a)(22)(A), inter alia, through the loss of use of his phone during each call as well as annoyance and harassment caused, proximately and actually, by Defendant CAST CAPITAL LENDING CORP.  Damages of $2500 per call for 11 of the 13 calls are hereby requested based on the harassment and civil stalking engaged in by Defendant.

107.    Defendant's acts of unfair competition include, but are not limited to, the following:  (1) directly violated the TCPA at 47 USC §227(c) and its regulations at 47 C.F.R. §64.1200(c)(2), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's residential telephone, whose telephone number was listed on the National Do Not Call Registry, and (2) directly violated 47 C.F.R. §64.1200(a)(2) and 47 USC §227(b)(1)(B), by engaging in a pattern or practice of initiating telephone solicitations to

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 35

23cv

Plaintiff's residential telephone line, using artificial or prerecorded voices to deliver a message without the prior express consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 USC §227(b)(2)(B).

108.    Defendant has directly violated California Business & Professions Code section 17592(c)(1) by making or causing to be made telephone calls to Plaintiff's California telephone number listed on the National Do Not Call Registry and seeking to rent, sell, promote, or lease goods or services (namely usury interest rate loans without a CFL license) during those calls.

109.    Plaintiff is entitled to, and hereby seeks, both punitive and exemplary damages to send a clear message to Defendant and others like Defendant to cease and desist from violation of the law.

110.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 36

23cv

damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1) and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) plus treble damages ($1,500 per call and per text), a total of $3,000 per call under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) $2,500 for each of the 11 calls that contained a pre-recorded artificial voice message at the beginning of each call.

h) for exemplary and punitive damages against Defendant in an amount to be determined with exactness at trial herein; and

i) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial.

Dated this 18ᵗʰ day of December, 2023.

/s/ Anton Ewing
_____
Anton A. Ewing, Plaintiff

# EXHIBIT 'A'

| **S&DC-S/N** | **Statement and Designation by Foreign Corporation** | 3905851 |
|---|---|---|

To qualify a corporation from another state or country to transact intrastate business in California, fill out this form, and submit for filing along with:

- A **$100** filing fee (for a foreign stock corporation) or **$30** filing fee (for a foreign nonprofit corporation), and
- A certificate of good standing, issued within the last six (6) months by the agency where the corporation was formed. **Note:** If the corporation is a nonprofit, the certificate of good standing also must indicate the corporation is a nonprofit or nonstock corporation.
- A separate, non-refundable **$15** service fee also must be included, if you **drop off** the completed form.

***Important!*** Corporations in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.



FILED
Secretary of State
State of California

MAY 06 2016

This Space For Office Use Only

**For questions about this form, go to** www.sos.ca.gov/business/be/filing-tips.htm.

**Corporate Name** (List the exact name of the corporation, as shown in the certificate of good standing. **If** the name of the corporation is not available for use in the State of California, the corporation must qualify under an assumed name. E.g., "[list the exact name] which will do business in California as [list the proposed assumed name]." For general corporate name requirements and restrictions in California, go to www.sos.ca.gov/business/be/name-availability.htm.)

① CAST CAPITAL LENDING CORP

**Corporate History**

② State or foreign country where this corporation was formed: NEW JERSEY

**Service of Process** (List a California resident or a California registered corporate agent that agrees to be your agent to accept service of process in case your corporation is sued. You may list any adult who lives in California. You may **not** list your own corporation as the agent. **Do not** list an address if the agent is a California registered corporate agent as the address for service of process is already on file.)

③ a. InCorp Services, Inc.
_Agent's Name_

b. _____ **CA** _____
_Agent's Street Address (if agent is **not** a corporation) - Do not list a P.O. Box_   City (no abbreviations)   State   Zip

The corporation named in Item 1 above irrevocably consents to service of process directed to it upon the agent designated above, and to service of process on the California Secretary of State if that agent or that agent's successor is no longer authorized to act or cannot be found at the address given.

**Corporate Addresses**

④ a. 15 CEDARWOOD LANE                          SADDLE RIVER   NJ   07458
_Street Address of Principal Executive Office - Do not list a P.O. Box_   City (no abbreviations)   State   Zip

b. _____ **CA** _____
_Street Address of Principal Office in California, if any - Do not list a P.O. Box_   City (no abbreviations)   State   Zip

c. 26 JOURNAL SQUARE, SUITE 801                JERSEY CITY   NJ   07306
_Mailing Address of Principal Executive Office, if different from 4a or 4b_   City (no abbreviations)   State   Zip

**Read and sign below:** This form must be signed **by an officer** of the foreign corporation.

▶ _Matthew J Elling_                 Matthew J. Elling                 V. President
Sign here                             Print your name here              Your officer title

| Make check/money order payable to: **Secretary of State** | **By Mail** | **Drop-Off** |
|---|---|---|
| Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | Secretary of State<br>Business Entities, P.O. Box 944260<br>Sacramento, CA 94244-2600 | Secretary of State<br>1500 11th Street, 3rd Floor<br>Sacramento, CA 95814 |

Corporations Code §§ 2105, 2106, Revenue and Taxation Code § 23153
S&DC-STK/NP (REV 04/2014)

2014 California Secretary of State
www.sos.ca.gov/business/be

**STATE OF NEW JERSEY**
**DEPARTMENT OF THE TREASURY**
**DIVISION OF REVENUE AND ENTERPRISE SERVICES**
**SHORT FORM STANDING**

3905851

**CAST CAPITAL LENDING CORP**
0450023294

*I, the Treasurer of the State of New Jersey, do hereby certify that the above-named New Jersey Domestic For-Profit Corporation was registered by this office on October 12, 2015.*

*As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.*

*I further certify that the registered agent and office are:*

BORIS LEYBEL
15 CEDARWOOD LANE
SADDLE RIVER, NJ 07458



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 1st day of March, 2016*

*Ford M. Scudder*
*Acting State Treasurer*

Certificate Number : 6061070717

Verify this certificate online at

https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_CERT.jsp

# EXHIBIT 'B'

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,** | § § § | |
| **Plaintiff,** | § § | |
| | § | EP-23-cv-00365-KC |
| **v.** | § § | |
| **CAST CAPITAL FUNDING CORP,** a New Jersey Corporation and **VADIM LEYBEL** | § § § | |
| **Defendant.** | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2.      Defendant CAST CAPITAL FUNDING CORP ("Cast Capital") is a corporation organized and existing under the laws of New York and can be served via corporate officer Vadim Leybel, 15 Cedarwood Lane, Saddle River, New Jersey 07458.

3.      Defendant VADIM LEYBEL is a natural person, resident of New Jersey, personally participated in the calls alleged herein and can be served at 15 Cedarwood Lane, Saddle River, New Jersey 07458.

**JURISDICTION AND VENUE**

4.      Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

# EXHIBIT 'C'



**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

Stephanie Brown,
individually and on behalf of
others similarly situated,

   Plaintiff,

    v.

Cast Capital Lending Corp
d/b/a Cast Capital Funding
   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:


**CLASS ACTION**

**CLASS ACTION COMPLAINT**
**FOR**
 1. **VIOLATIONS OF THE**
  **TELEPHONE CONSUMER**
  **PROTECTION ACT, 47**
  **U.S.C. § 227(C) ET SEQ.;**
  **AND**

 2. **VIOLATIONS OF**
  **FLORIDA STATUTE §**
  **501.059**

**JURY TRIAL DEMANDED**

**INTRODUCTION**

1. Plaintiff, Stephanie Brown, brings this action against Defendant Cast

    Ca[ital Lending Corp d/b/a Cast Capital Funding ("Defendant"), to

    secure redress for violations of the Telephone Consumer Protection Act

    ("TCPA"), 47 U.S.C. § 227 and Florida Statute § 501.059.

2. This is a putative class action pursuant to the Telephone Consumer

    Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA") and Fla. Stat. §

    501.059.

1

# EXHIBIT 'D'

Gmail - Per Our Conversation

 Gmail                                                     **Doe John <sddronevideos@gmail.com>**

## Per Our Conversation
1 message

**Shane Himmelman** <shane@castcapitalteam.com>                      Mon, Dec 18, 2023 at 9:51 AM
To: sddronevideos@gmail.com

please send last four months of business bank account statements

--
Shane Himmelman
Managing Director
Cast Capital Funding
2160 N Central Rd #303
Fort Lee, NJ 07024

P: 201-515-5563 **ext 109**
C: 508-801-0638
shane@castcapitalteam.com
www.castcapitalfunding.com

# EXHIBIT 'E'

12/18/23, 10:20 AM                                    License Search - Customer Service

City: [                    ]

State: [ Any              ▾]

Zip: [                     ]

[Search]

| License Number | Status | Status Effective Date | Licensee Name | Organization DBA | Originally Licensed Date | License Category | Public Actions |
|---|---|---|---|---|---|---|---|
| 60DBO-58373 | Inactive | 4/16/2021 | Cast Capital Lending Corp | | 8/8/2016 | California Finance Lender and Broker | No (https://dfpi.ca.gov/enf-C/) |

1

View our Privacy Policy (http://www.dfpi.ca.gov/privacy.asp)

# EXHIBIT 'F'

From:        Anton Ewing
To:          Anton Ewing
Date:        Monday, December 18, 2023 9:56:49 AM
Attachments: image001.png

 **Cast Capital**

**Business Loan Application**

## Basic Information

| Legal Business Name: | Fed Tax ID: |
|---|---|

DBA:

Physical Address:

| Corporate Structure: | Business Start: |
|---|---|

| Business Phone #: | Email: | Website: |
|---|---|---|

| Have you received a business loan in the last 30 days?  ○ YES  ● NO | Have you ever defaulted on a business loan?  ○ YES  ● NO |
|---|---|

| Monthly Sales (Gross): | Requested Amount of Funds: |
|---|---|

## Owner Information

| Owner Name:  Anthony Starky | SSN#: |
|---|---|
| Home Address: | Credit Score: |

| Date of Birth: | Home #: | Cell #: | Ownership%: |
|---|---|---|---|

By signing below, each of the above listed business and business owners (individually and collectively, "you") authorize Cast Capital Lending Corp ("CCLC") and each of its representatives, successors, assigns and designees ("Recipients") that may be involved with or acquire commercial loans having dailer repatment features or purchases of future receuvables including Merchant Cash Advance transactions, including without limitation the application there for to obtain consumer or personal, business and investigative reports and other information a bout you, including credit card processor statements and bank statements, from one or more consumer reporting agencies, such as TransUnion, Experian and Equifax, and from other credit bureaus, banks, creditors and other third parties. You also authorize CCLC to transmit this application form, along with any of the for egoing information obtained in connection with this application, to any or all of the Recipients for the foregoing purposes. You also consent to the release, by a ny creditor or financial institution, of any information relating to any of you, to CCLC and to each of the Recipients, on its own behalf.

| Applicant Signature: | Date: |
|---|---|

265 w 37th street, New York City, NY 10018    -    Phone: (201) 515-5563    -    Fax: 201-537-5694

# EXHIBIT 'G'



**F**

# State of California
## Secretary of State

### Statement of Information
#### (Foreign Corporation)
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FN04516**

**FILED**

In the office of the Secretary of State
of the State of California

**MAY-31 2017**

| 1. CORPORATE NAME |
| --- |
| CAST CAPITAL LENDING CORP |

| 2. CALIFORNIA CORPORATE NUMBER | C3905851 | This Space for Filing Use Only |
| --- | --- | --- |

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.
☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 13.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| CAST CAPITAL LENDING CORP 26 JOURNAL SQUARE PLAZA, SUITE 801, JERSEY CITY, NJ 07306 | | | |

| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| | | | |

| 6. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| CAST CAPITAL LENDING CORP   265 W37TH ST PH2300A, NEW YORK, NY 10018 | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 7. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- | --- |
| MATTHEW JOSEPH ELLING | 134 HENDEL AVE, NORTH ARLINGTON, NJ 07031 | | | |

| 8. SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- | --- |
| BORIS LEYBEL | 15 CEDARWOOD LANE, SADDLE RIVER, NJ 07458 | | | |

| 9. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- | --- |
| VADIM LEYBEL | 150 BAY STREET 801, JERSEY CITY, NJ 07306 | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

| 10. NAME OF AGENT FOR SERVICE OF PROCESS [Note: The person designated as the corporation's agent MUST have agreed to act in that capacity prior to the designation.] |
| --- |
| INCORP SERVICES, INC. |

| 11. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL**  CITY | STATE | ZIP CODE |
| --- | --- | --- |
| | | |

**Type of Business**

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
| --- |
| CONSULTING |

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 05/31/2017 | VADIM LEYBEL | CEO | |
| --- | --- | --- | --- |
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-350 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
| --- | --- |

# EXHIBIT 'H'

# Phone



## +1 619-864-7176 ✓

**Add note** ✏️

**Valid number**

 

**Today**

**9:44 AM**

📞 Incoming call, 7 mins 30 sec

**Today**



+1 619-86
4-7176
California

9:44 AM

↗️ **Collette Stark**

9:21 AM


➕
Add


🔗
Share


🚫
Block

⋮
More