UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON A. EWING,<br><br>                     Plaintiff,<br><br>v.<br><br>CAST CAPITAL LENDING CORP,<br><br>                     Defendant. | Case No.: 23-CV-2299 JLS (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(ECF No. 7) |

Presently before the Court is Plaintiff Anton A. Ewing's Motion for Default Judgment and Request to Depose Non-Responding Defendant ("Mot.," ECF No. 7). Noting Defendant Cast Capital Lending Corp. ("Defendant" or "CCLC") had not responded to the Motion in accordance with Civil Local Rule 7.1(e)(2), the Court previously took this matter under submission. ECF No. 8. Having carefully considered Plaintiff's arguments, the allegations in his Complaint ("Compl.," ECF No. 1), and the law, the Court now **GRANTS** the Motion **IN PART** and **DENIES** the Motion **IN PART**.

## BACKGROUND

### I. Plaintiff's Allegations

Plaintiff is a San Diego resident who registered his personal cellphone on the federal Do Not Call registry, which, per Plaintiff, allows individuals to announce their "desire not to receive telephone solicitations." Compl. ¶¶ 1–2, 11. Meanwhile, Defendant is a New

Jersey corporation that is "in the business of selling debt consolidation services through an attorney." *Id.* ¶ 3. According to the Complaint, CCLC is run by Vadim Leybel—who is not a party in this case—and conducts business "using the assumed name 'Cast Capital Funding'" ("CCF"). *Id.* ¶¶ 34–35.

Plaintiff alleges CCLC texted his personal cellphone twice—once on November 30, 2023, from a number ending in -7176, and again on December 1, 2023, from a number ending in -7896. *Id.* ¶ 48. Plaintiff states these text messages were sent via "short code"—rather than ten-digit numbers—and contained "solicitations encouraging the purchase of Defendant's services." *Id.* ¶¶ 39, 58. Plaintiff also alleges the texts were "generic" because they did not address him by name, *id.* ¶¶ 60–61, and that at least one was sent after he "had submitted valid 'STOP' and 'BYE' requests," *id.* ¶ 98.

Additionally, Plaintiff allegedly received eleven phone calls between November 8 and December 18 of 2023. Specifically, Plaintiff alleges numbers ending in -7176, -2805, and -3940 each called him thrice, while a number ending in -1884 called him twice. *Id.* ¶ 48. Plaintiff alleges each of these calls began with a "'bubble popping' type sound followed by a rather long pause." *Id.* ¶ 39. After each pause, Plaintiff heard a pre-recorded message, which stated: "Could you use a reduction or elimination of your debts? Press one to be connected to one of our specialist attorneys." *Id.* ¶ 54 (emphases omitted).

During the December 18 call, Plaintiff claims he spoke to Shane Himmelman ("Himmelman"), one of Defendant's employees. *Id.* ¶ 23. Per the Complaint, this call was initiated by the same -7176 number that had texted Plaintiff on November 30. *Id.* ¶ 48. During the call, Himmelman allegedly admitted that (1) Defendant "record[s] all of its solicitation calls," *id.* ¶ 23; (2) he had dialed Plaintiff's number "using a computer software that stores and automatically dials the phone numbers," *id.* ¶ 51; and (3) a consumer receiving a call from Defendant could press "1" on their phone to prompt "the software" to "connect[] or transfer[] the call to . . . [a] telemarketer in the office," *id.*

Plaintiff claims the above solicitations came even though he "[was] not a customer of Defendant's . . . and ha[d] never provided any personal information . . . to [Defendant]

for any purpose."[1] *Id.* ¶ 69.  Plaintiff also alleges he (1) told Defendant "at least once to stop contacting him" and (2) informed Defendant that he was registered on the Do Not Call list. *Id.*

## II.     Procedural History

Plaintiff, proceeding pro se, initiated this action on December 18, 2023.  His Complaint contains causes of action for violations of 47 U.S.C. §§ 227(b)(1) and 227(c)(5) of the Telephone Consumer Protection Act ("TCPA"), California Penal Code §§ 632.7 and 637.2, and California Civil Code § 1770(a)(22)(A).  *See id.* at 1.[2]  The latter two causes of action stem from the California Invasion of Privacy Act ("CIPA") and California's Consumer Legal Remedies Act ("CLRA"), respectively.

A Summons ("Summons," ECF No. 2) was issued the day the Complaint was filed, and Plaintiff submitted a Proof of Service of Summons ("Proof of Service," ECF No. 4) form on December 22, 2023.  After Defendant failed to answer the Complaint, Plaintiff requested an entry of default on January 19, 2024, ECF No. 5, and default was entered on January 23, ECF No. 6.  The instant Motion followed on January 29.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application.  Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion.  *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).

The Ninth Circuit has set out seven factors, known as the *Eitel* factors, that a court may consider when exercising its discretion as to whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint,

---

[1] Elsewhere, the Complaint states Plaintiff "demanded that Defendant stop calling at the end of the first call." Compl. ¶ 78. But oddly, the Complaint provides no other description of that call. Indeed, nothing else in the Complaint suggests Plaintiff ever spoke to anyone except for Himmelman on December 18.

[2] Pin citations to docketed material in this Order refer to the CM/ECF page numbers stamped across the top margin of each document.

> (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

When weighing these factors, the well-pled factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). To prove damages, a plaintiff may submit declarations, or the Court may hold an evidentiary hearing. *See Affinity Grp., Inc. v. Balser Wealth Mgmt., LLC*, No. 05CV1555 WQH (LSP), 2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007); *see also Finisar Corp. v. Gigalight (USA) Corp.*, No. 18-CV-01077-RS, 2018 WL 8264089, at *4 (N.D. Cal. Nov. 15, 2018) ("Plaintiffs . . . bear the burden of 'proving up' their damages through testimony or written affidavit.").

Litigants proceeding pro se are ordinarily entitled to have their pleadings and arguments construed liberally. However, this "leeway" is not given to practicing attorneys appearing without their own representation. *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023). And to the extent such solicitude extends to plaintiffs who have attended law school and have past litigation experience, said solicitude is reduced. *See id.* at 1020–21; *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the [litigant proceeding pro se] is experienced in litigation and familiar with the procedural setting presented."). So, as this Court has previously held, Plaintiff's pleadings are entitled to at-most reduced deference. *See Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *3 (S.D. Cal. Jan. 19, 2024) (declining to grant plaintiff the liberal construction due most pro se litigants given his vast experience with TCPA suits and his legal education).

/ / /

/ / /

/ / /

# ANALYSIS

## I. Jurisdiction

Before determining whether to enter default judgment against Defendant, the Court must confirm it has subject matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). Plaintiff carries the burden of establishing jurisdiction. *See, e.g.*, *Jackson v. Red Rock Credit Sols., LLC*, No. 22-CV-04471-AGT, 2023 WL 5663218, at *1 (N.D. Cal. Aug. 30, 2023).

### A. *Subject Matter Jurisdiction*

This action falls within the Court's subject matter jurisdiction. Specifically, the Court has federal question jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331. And, as the Complaint's causes of action all arise from the same alleged phone calls and text messages, the Court has supplemental jurisdiction over Plaintiff's CIPA and CLRA claims by way of 28 U.S.C. § 1367(a). *See, e.g.*, *Ewing v. Flora*, No. 14CV2925 AJB (NLS), 2015 WL 12564225, at *3 (S.D. Cal. Mar. 25, 2015) (finding "exercise of supplemental jurisdiction over Plaintiff's CIPA claim . . . appropriate" where the TCPA provided an "independent basis for federal jurisdiction").

### B. *Personal Jurisdiction*

In this case, the Court's personal jurisdiction analysis involves two inquiries: service of process and specific jurisdiction. Both are satisfied here.

#### 1. *Service of Process*

The Court first considers service of process. *See Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Pursuant to Federal Rule of Civil Procedure 4(h)(1), a corporation within a judicial district of the United States must be served (A) by following state law for service of process on an individual, or (B) "by delivering a copy of the summons and of the

complaint to an officer . . . or any other agent authorized . . . to receive service of process." Fed. R. Civ. P. 4(h)(1)(A)–(B).

Here, the Court concludes service was proper pursuant to both Rule 4(h)(1)(A)—through California Code of Civil Procedure § 416.10—and Rule 4(h)(1)(B). Plaintiff provided a copy of the summons and Complaint by way of personal service on InCorp Services, Inc. ("InCorp"), located at 5716 Corsa Avenue, Suite 110 in Westlake Village, California, on December 20, 2023. *See* Proof of Service at 1. Defendant has designated InCorp as its agent for the purposes of accepting service of process in California.[3] *See id.*; Compl. at 40. And, mirroring Rule 4(h)(1)(B), California allows a corporation to be served through personal service on "the person designated as agent for service of process." Cal. Civ. Proc. Code § 416.10(a).

### 2.  *Specific Jurisdiction*

A court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations. In this case, those considerations are one and the same. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.").

Where, as here, a plaintiff alleges specific jurisdiction, "[t]he Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient." *Ewing v. Senior Life Plan., LLC*, No. 19-CV-1005-BAS-LL, 2019 WL 4573703, at *2 (S.D. Cal. Sept. 18, 2019) (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Under this inquiry, specific jurisdiction exists if:

> (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking

---

[3] The Court may take judicial notice of Defendant's profile on the California Secretary of State's website pursuant to Federal Rule of Evidence 201. *See Gerritsen v. Warner Bros. Ent., Inc.*, 112 F. Supp. 3d 1011, 1033–34 (C.D. Cal. 2015) (taking judicial notice of business entity profile from said website). This profile indicates Defendant's filing status has changed from active to "forfeited." *Business Search*, California Secretary of State, https://bizfileonline.sos.ca.gov/search/business (last visited June 11, 2024). But this change took place on April 2, 2024—after Plaintiff initiated the instant action and served Defendant. *Id.*

> the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities[;] and (3) the exercise of jurisdiction is reasonable.

*Id.* (citing *Myers v. Bennett Law Offs.*, 238 F.3d 1068, 1072 (9th Cir. 2001)).  If Plaintiff can satisfy the first two steps, it falls to Defendant to show "the exercise of jurisdiction would not be reasonable."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The Complaint alleges Defendant "conducts business in this District" and targeted Plaintiff—who resides in California—with its marketing.  Compl. ¶ 6.  To that end, Plaintiff claims he received eleven unsolicited calls and two unwanted texts from Defendant in violation of the TCPA.  *Id.* ¶¶ 48, 50.

The above allegations are sufficient to satisfy the first two prongs of the specific jurisdiction inquiry.  *See, e.g.*, *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. C-13-00229 JCS, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013) (explaining that "where an out-of-state defendant contacts a plaintiff who resides in California in violation of the TCPA," "the defendant has directed its activities at the forum state" and "the TCPA claim arises out of that conduct"), *report and recommendation adopted*, No. 13-CV-00229-YGR, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013); *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *4 (C.D. Cal. Nov. 21, 2017) (similar).  And "[b]ecause [Defendant] has failed to respond to the Complaint, it has not met its burden to show that exercise of jurisdiction in this forum would not be reasonable."  *Senior Life Plan.*, 2019 WL 4573703, at *2.

## II.  Procedural Prerequisites

Assured of its jurisdiction, the Court turns to whether the procedural prerequisites for entry of default judgment are satisfied.  A court may not enter default against a minor or incompetent person unless that person is represented by a fiduciary who has appeared.  Fed. R. Civ. P. 55(b)(2).  Moreover, in any civil action or proceeding in which the defendant does not make an appearance, a court "shall require the plaintiff to file with the

court an affidavit" either (1) "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit" or (2) "stating that the plaintiff is unable to determine whether or not the defendant is in military service." 50 U.S.C. § 3931.

The Court concludes it is not procedurally barred from entering default judgment. Plaintiff submitted a Declaration ("Pl.'s Decl," ECF No. 9) in support of his Motion addressing Rule 55(b)(2)'s requirements. As this Declaration was filed four months after the instant Motion, however, the Court is not inclined to consider it. Nevertheless, because Defendant is a corporation, Rule 55(b)(2) and § 3931 pose no barrier to Plaintiff's ability to seek default judgment. *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 822 (D.N.J. 2021) (explaining default judgment rules regarding "infants, "incompetent persons," and "persons in military" do not apply to corporate defendants).

## III. Entry of Default Judgment

With the threshold issues resolved, the Court will turn to the merits of Plaintiff's Motion and the *Eitel* factors. Before doing so, however, the Court notes that the Motion does not reference the Complaint's CLRA claim for violations of California Civil Code § 1770(a)(22)(A). Thus, the Court considers this claim waived and will analyze Plaintiff's ability to recover only on his TCPA and CIPA causes of action. *See, e.g.*, *G & G Closed Cir. Events, LLC v. Erdem*, No. CV-12-01283-PHX-JAT, 2013 WL 5295872, at *2 n.2 (D. Ariz. Sept. 19, 2013) ("Because the motion for default judgment does not mention [Count II of the Complaint] at all, the Court deems it to be dismissed with prejudice with Plaintiff to take nothing on Count II."); *Schluter Sys., L.P. v. Telos Acquisition Co. 10, LLC*, No. 23-CV-03856-EMC, 2024 WL 1659898, at *4 (N.D. Cal. Apr. 16, 2024) (deeming claim not mentioned in default judgment motion to be waived).

### A. *Factor I: Prejudice to the Plaintiff*

The Court first considers whether Plaintiff "will suffer prejudice if a default judgment is not entered." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). Defendant has failed to appear or otherwise participate in this action. So, absent default judgment, Plaintiff will likely be without recourse, and this factor favors Plaintiff.

*See, e.g., id.*; *Holiday Sys. Int'l of Nev. v. Vivarelli, Schwarz & Assocs., S.A. de. C.V.*, No. 2:10-CV-00471-MMD, 2014 WL 204340, at *2 (D. Nev. Jan. 17, 2014) ("[T]he possibility of prejudice to Plaintiff is great in light of [Defendant's] failure to appear . . . ."); *J & J Sports Prods., Inc. v. Aiken*, No. 1:18-CV-00489-BLW, 2022 WL 3213094, at *1 (D. Idaho Aug. 9, 2022) ("[I]f the Court wholly denied the motion, Plaintiff's [sic] would be left without a remedy given Defendants' failure to appear and defend themselves.").

### B.     *Factors II and III: Merits of the Claims and Sufficiency of the Complaint*

Courts often analyze the second *Eitel* factor (the merits of the plaintiff's substantive claims) and the third (the sufficiency of the complaint) together. *See, e.g.*, *Senior Life Plan.*, 2019 WL 4573703, at *3. These factors require a complaint to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims cross "the line from the conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court will first address the Complaint's TCPA claims before moving on to Plaintiff's CIPA cause of action.

#### 1.    TCPA

The Complaint first alleges violations of two TCPA provisions: 47 U.S.C. §§ 227(b)(1)(A) and 227(c)(5). *See* Compl. at 28.

##### a.    47 U.S.C. § 227(b)(1)

Section 227(b)(1)(A) of the TCPA renders it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice" to select telephone lines. 47 U.S.C. § 227(b)(1)(A). Such lines include "any telephone number assigned to a . . . cellular telephone service." *Id.* § 227(b)(1)(A)(iii). For purposes of these provisions, a text message is considered a "call." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

To bring a § 227(b)(1)(A) claim, "[t]he plaintiff must be the 'called party.'" *Senior Life Plan.*, 2019 WL 4573703, at *3 (quoting *Drew v. Lexington Consumer*

*Advocacy*, No. 16-cv-00200-LB, 2016 WL 9185292, at *6 (N.D. Cal. Aug. 11, 2016)). "[U]nder the TCPA, a 'called party' has been interpreted to refer to the telephone subscriber." *Charkchyan v. EZ Cap., Inc.*, No. 2:14-CV-03564-ODW, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015). Plaintiff alleges he was "the owner and sole user of" the "private residential cellular phone" that Defendant called and texted. Compl. ¶¶ 1, 48. These allegations are sufficient to establish that Plaintiff was the "called party." *See, e.g.*, *Drew*, 2016 WL 9185292, at *6.

Beyond the baseline called-party requirement, the Ninth Circuit has interpreted § 227(b)(1) to contain three elements: "(1) the defendant called a cellular telephone number; (2) using an [ATDS or an artificial prerecorded voice]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The third element is not at issue here, however, as the court later clarified that "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).

As to § 227(b)(1)'s first element, Plaintiff "need only allege facts supporting a plausible inference that the defendant is responsible for the illegal calls that the plaintiff allegedly received." *Abante Rooter & Plumbing, Inc. v. Ingenious Bus. Sols., Inc.*, No. C 18-06591 WHA, 2019 WL 1201621, at *3 (N.D. Cal. Mar. 14, 2019). Here, Plaintiff alleges he received eleven calls and two texts, all of which were geared at selling the same kind of services Defendant purportedly provides (debt consolidation). Compl. ¶¶ 3, 48, 54–55, 58. Plaintiff further claims he spoke to Himmelman during the December 18 call—which originated from the same -7176 number as two of the other calls and one of the texts—about CCLC's products. *See id.* ¶¶ 23, 48, 80. Supporting the connection between Himmelman and Defendant is a copy of a follow-up email, attached to the Complaint, that was purportedly sent by Himmelman from an "@castcapitalteam.com" account. *Id.* at 47. Himmelman's email signature identifies him as a managing director at CCF. *Id.* The email also indicates the main number for Himmelman's CCF office is (201) 515-5563, which

matches the number on the bottom of CCLC's "Business Loan Application" form. *Id.* at 47, 51. These allegations are sufficient to support the plausible inference that CCLC is responsible for the calls and texts Plaintiff allegedly received.[4]

Regarding the eleven calls, the Complaint also satisfies § 227(b)(1)(A)'s prerecorded voice requirement. When it comes to phone calls and prerecorded voice use, courts credit allegations that a plaintiff was "unable to reach a live operator without either remaining on the line or pressing numbers on their phone keypad," or that the calls contained "generic statements that were repeated verbatim." *See Freedom Forever*, 2024 WL 221777, at *9 (internal quotation marks and citation omitted). And in this case, Plaintiff claims all eleven calls began with the same, generic statement that required him to press "1" to be connected to a "specialist." Compl. ¶ 54.

As to the alleged texts, Plaintiff has adequately pled that they were sent through the use of an ATDS.[5,6] On this point, courts look for allegations that the text messages were "formatted in SMS short code" and "scripted" in an "impersonal manner," *Charkchyan*, 2015 WL 3660315, at *3, as well as allegations suggesting the plaintiff "had no other reason to be in contact with [the defendant]," *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). Here, the Complaint alleges the texts were "generic," did not address Plaintiff by name, and came despite the lack of a preexisting

---

[4] *See, e.g.*, *Javitch v. Simply Solar*, No. 19-CV-04794-JST, 2020 WL 13547896, *4 (N.D. Cal. May 8, 2020) (finding sufficient allegations that the calls pitched services related to defendant's "industry" and that defendant's representative followed up shortly after a prior call); *Ewing v. CSOLAR*, No. 22-CV-0720-WQH-JLB, 2022 WL 4449326, at *3 (S.D. Cal. Sept. 22, 2022) (accepting on its own the allegation that "Defendant 'called or texted Plaintiff' from various numbers . . . 'to sell its solar panel installation services'").

[5] The TCPA defines an ATDS as "equipment which has the capacity" to (1) "store or produce telephone numbers to be called, using a random or sequential number generator; and" (2) "to dial such numbers." 47 U.S.C. § 227(a)(1).

[6] Inaudible text messages by their nature cannot include a prerecorded voice; so, to recover for text messages under § 227(b)(1)(A), a plaintiff must plausibly allege the messages were sent using an ATDS. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1158 (9th Cir. 2023).

relationship between the Parties. *See* Compl. ¶¶ 60–61, 63.

Given the above, the Court concludes Plaintiff has plausibly pled each of the elements of his § 227(b)(1)(A) claims as to the alleged eleven calls and two texts.

                b.      47 U.S.C. § 227(c)(5)

The TCPA also provides a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection c]." 47 U.S.C. § 227(c)(5). Plaintiff must therefore plausibly allege "three elements: (1) for each call, Plaintiff received more than one other telephone call within any 12-month period; (2) the calls were made by or on behalf of the same entity; and (3) the calls were made in violation[] of the regulations prescribed under § 227(c)." *Doyle v. JTT Funding, Inc.*, No. LA CV18-06145 JAK (ASx), 2019 WL 13037025, at *8 (C.D. Cal. Dec. 2, 2019).

Plaintiff easily satisfies the first two elements. The alleged communications all took place between November 8 and December 18, 2023. Compl. ¶ 47. Plus, as explained above, Plaintiff has plausibly alleged that the calls and texts were sent by the same entity—CCLC. *See supra* Section III.B.1.a. So, for each communication alleged in the Complaint, Plaintiff received another from the same entity within the statutory twelve-month period. *See Doyle*, 2019 WL 13037025, at *8.

This leaves the violation-of-an-applicable-regulation requirement. The Complaint alleges Defendant violated 47 C.F.R. § 64.1200(c)(2), under which telemarketers are barred from calling "residential telephone subscriber[s]"[7] who have registered their number on "the national do-not-call registry." Here, Plaintiff alleges that he did so register his phone. Compl. ¶ 88. This allegation is sufficient for the purposes of § 64.1200(c)(2).

---

[7] Though § 64.1200(c)(2) refers to "residential" subscribers, it also applies to calls made to wireless subscribers who use their cell phones for residential purposes. *See Blalack v. RentBeforeOwning.com*, No. LA CV21-09048 JAK (AFMx), 2022 WL 7320045, at *3 (C.D. Cal. Oct. 11, 2022). Indeed, "a cell phone is presumptively residential." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). So, the Complaint's references to Plaintiff's "personal, private residential cellular phone," *see, e.g.*, Compl. ¶ 1, are sufficient to establish that the alleged calls were to a "residential telephone subscriber."

*See, e.g.*, *Stark v. Bridgepoint Benefits, LLC*, No. 3:19-CV-01740-AJB-AGS, 2021 WL 5861561, at *3–4 (S.D. Cal. Jan. 25, 2021) (crediting allegation that a phone number was registered on the Do Not Call registry without demanding more detail).

However, § 64.1200(c) and its subdivisions apply only to "telephone solicitation[s]," defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(c), (f)(15). The Complaint's eleven calls fit this definition, as each allegedly began with the following prerecorded message: "Could you use a reduction or elimination of your debts? Press one to be connected to one of our specialist attorneys." Compl. ¶ 54 (emphasis omitted). But the same cannot be said for the alleged texts, as to which the Complaint states only: "The text messages . . . [were] solicitations encouraging the purchase of Defendant's services." *Id.* ¶ 58. This allegation is simply too conclusory for the Court to credit.[8]

Consequently, Plaintiff has plausibly alleged all the elements of a § 227(c)(5) claim as to the eleven calls,[9] but not the two text messages.[10]

---

[8] *Compare Eggleston v. Reward Zone USA LLC*, No. 2:20-CV-01027-SVW-KS, 2022 WL 886094, at *6–7 (C.D. Cal. Jan. 28, 2022) (finding characterization of text messages as "'spam advertisements and/or promotional messages' that solicited Defendant's 'rewards' and 'associated promotions'" too conclusory) *aff'd sub nom. Trim*, 76 F.4th 1157, *and Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 479–80 (S.D.N.Y. 2018) (dismissing TCPA claims where the complaint primarily referred to "the 'initial telemarketing text message'"), *with Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2024 WL 1765659, at *7 (D. Ariz. Apr. 24, 2024) (holding plaintiff "plausibly establish[ed] that the messages qualif[ied] as telephone solicitations" given the complaint's "non-conclusory factual allegations regarding the content of the text messages").

[9] A plaintiff may recover under 47 U.S.C. § 227(c)(5) not for each regulatory violation, but instead for each *call* made in violation of one or more of the relevant regulations. *See Heidorn*, 2013 WL 6571629, at *16. Accordingly, the Court need not consider whether Plaintiff has stated a claim with respect to the eleven alleged calls and other provisions of 47 C.F.R § 64.1200. *See Stark v. Fusion Consulting Servs. #2, LLC*, No. 19-CV-1897-CABWVG, 2020 WL 13517511, at *2 n.2 (S.D. Cal. July 9, 2020).

[10] The Complaint also claims the text messages were sent in violation of § 64.1200(d). That provision, however, applies to calls made "for telemarketing purposes." 47 C.F.R. § 64.1200(d). And the TCPA's definition of "telemarketing" is functionally identical to the definition of "telephone solicitation." *See id.* § 64.1200(f)(13) ("The term telemarketing means the initiation of a telephone call or message for the

       *2.   CIPA Claim*

Second, the Complaint contains a CIPA claim. Compl. at 34. Plaintiff claims Defendant violated California Penal Code § 632.7, which "imposes liability on anyone 'who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between' a cellular telephone and another telephone." *Collins v. Enver Solar Inc.*, No. SACV19-00146-JLS-KES, 2021 W 4551174, at *3 (C.D. Cal. May 26, 2021) (omission in original) (quoting Cal. Penal Code § 632.7). Section 632.7 applies to "parties to the communication" as well as third-party eavesdroppers. *Smith v. LoanMe, Inc.*, 483 P.3d 869, 881 (Cal. 2021). Meanwhile, the nearly-indistinguishably-numbered California Penal Code § 637.2 provides a private right of action to enforce § 632.7.

To state a § 632.7 claim, a plaintiff must plausibly allege: (1) "that [defendant] recorded a telephone call with [plaintiff];" (2) "that one of the parties to the recorded call was using a cell phone;" and (3) "that plaintiff did not consent to the recording." *Senior Life Plan.*, 2019 WL 4573703, at *4 (alterations in original) (quoting *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw. Inc.*, No. 12-cv-1685 BAS (JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016)). Because the Complaint alleges all relevant communications were made to Plaintiff's cellphone, and that he never consented to any recording, Compl. ¶¶ 48, 102, the latter two elements are satisfied as to the eleven calls.[11]

The Complaint is somewhat light, however, on allegations regarding the first element. Plaintiff claims Himmelman "admitted . . . at the end of the 12/18/2022 telemarketing call . . . that Defendant does in fact record all of its solicitation calls." *Id.* ¶ 23. Plaintiff further alleges "Himmelman transferred the call to another male person who

---

purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."). Plaintiff's text-message-related allegations thus also fail under § 64.1200(d).

[11] In his Motion, Plaintiff states that he seeks to recover for only the calls—and not the text messages—under CIPA. *See* Mot. at 4.

attempted to justify the . . . act of recording" by referencing "training and quality control purposes." *Id.* From these allegations, the Court can infer Defendant recorded the December 18 call. *See, e.g.*, *Collins*, 2021 WL 4551174, at *3; *Fusion Consulting*, 2020 WL 13517511, at *3. But the same inference cannot be made as to the remaining calls. The Complaint does not state whether Plaintiff answered the other ten calls, let alone whether he had a sales conversation with a representative that would have been recorded.[12]

Accordingly, Plaintiff has sufficiently pled only one CIPA violation. *See, e.g.*, *id.* (finding just two of ten calls shown to be recorded where the complaint "allege[d] that Plaintiff answered" only those two calls).

### C. Factor IV: Sum of Money at Stake

Under this factor, the Court considers whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, Plaintiff seeks $94,000 in statutory damages. *See* Mot. at 4. Plaintiff arrives at this number as follows: (1) $19,500 for thirteen willful violations of TCPA § 227(b)(1) ($1,500 per call/text); (2) $19,500 for thirteen willful violations of TCPA § 227(c)(5) ($1,500 per call/text); and (3) $55,000 for eleven violations of CIPA §§ 632.7 and 637.2 ($5,000 per call). *See* Mot. at 4; *see generally* Compl. But as explained above, Plaintiff has sufficiently pled only thirteen violations of § 227(b)(1), eleven violations of § 227(c)(5), and one violation of CIPA. Plaintiff is thus entitled to recover $41,000 at most. As that sum "is no more than is allowed under the statute[s], the Court finds this factor supports granting default judgment." *Senior Life Plan.*, 2019 WL 4573703, at *5.

### D. Factor V: Possibility of Factual Dispute

This factor turns on how likely it is that a dispute concerning material facts exists or may later arise. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiff's allegations must be taken as

---

[12] Indeed, some of the Complaint's allegations suggest Plaintiff spoke with a representative from CCLC only once. *See, e.g.*, Compl. ¶ 69 ("Plaintiff told Defendant . . . at least once to stop contacting him.").

true because of the default, *see TeleVideo*, 826 F.2d at 917–18, and there is no indication that CCLC will defend against this action. Any purported factual disputes thus appear to be settled, and this factor favors default.

### E. Factor VI: Possibility of Excusable Neglect

If a defendant's default may have been the product of excusable neglect, this factor weighs against granting default judgment. *Eitel*, 782 F.2d at 1471–72. Defendant was served with the Summons and Complaint. *See generally* Proof of Service. It also appears Defendant was given notice of Plaintiff's Request for Entry of Default (ECF No. 5) and the instant Motion. *See* ECF No. 5-1 at 3; Mot. at 18. Consequently, this factor weighs in favor of entry of default judgment. *See, e.g.*, *Senior Life Plan.*, 2019 WL 4573703 at *5.

### F. Factor VII: Policy Favoring Merits Decisions

Although this factor generally weighs against default judgment because it encourages merits decisions, "[t]he fact that Rule 55(b) has been enacted . . . indicates that 'this preference, standing alone, is not dispositive.'" *Landstar Ranger*, 725 F. Supp. 2d at 922 (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). There is no indication that a merits decision is practicable here, as Defendant has yet to answer the Complaint. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible."). The Court therefore concludes the timely administration of justice outweighs the strong preference for merits decisions in this case. Consequently, this factor also weighs in favor of default judgment.

Based on the above, the Court finds that all the *Eitel* factors weigh in favor of default judgment as to some of the claims in the Complaint, but not others. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion, as detailed below.

## IV. Relief Sought

Under Federal Rule of Civil Procedure 8(a)(3), Plaintiff's demand for relief must be specific, and he must "prove up" the amount of damages. *Landstar Ranger,* 725 F. Supp. 2d at 923 (quoting *Philip Morris USA Inc. v. Banh*, No. CV 03–4043 GAF

(PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005)). That said, as both the TCPA and CIPA provide for statutory damages calculated on a per-violation basis, "Plaintiff's burden to prove up the amount of damages is minimal." *Righetti v. Auth. Tax Servs., LLC*, No. C-14-0146 EMC, 2015 WL 4089799, at *3 (N.D. Cal. July 6, 2015). Separately, "Rule 54(c) 'allows only the amount prayed for in the complaint to be awarded to the plaintiff in default.'" *Landstar Ranger*, 725 F. Supp. 2d at 923 (quoting *Philip Morris USA*, 2005 WL 5758392, at *6).

The Complaint contains prayers for statutory damages and injunctive relief, *see* Compl. at 36–37, and Plaintiff appears to seek the same in his Motion,[13] *see* Mot. at 4, 16. The Court will discuss each request in turn.

### A.    Damages

#### 1.    TCPA

As explained *supra* in Section III.B.1, Plaintiff has adequately pled thirteen violations of TCPA § 227(b)(1) and eleven violations of TCPA § 227(c)(5).[14] The Court must therefore determine the amount of statutory damages due Plaintiff for each violation.

The TCPA essentially provides two options. First, §§ 227(b)(1) and 227(c)(5) both enable a plaintiff to request statutory damages of up to $500 per violation in lieu of actual damages. *See, e.g.*, *Senior Life Plan.*, 2019 WL 4573703, at *6. Alternatively, the TCPA allows courts to grant up to $1,500 in statutory damages for each *willful* or *knowing* violation of either provision. *See* 47 U.S.C. §§ 227(b)(3), (c)(5). "District courts in this circuit have typically exercised their discretion to award treble damages in cases [1] where

---

[13] In his Motion, Plaintiff also asks the Court for "permission to depose [CCLC]," as he hopes "to determine other calls and call centers used to make the calls alleged in the Complaint." Mot. at 6. This request is **DENIED**.

[14] Courts have determined the TCPA allows for "separate recoveries for an ATDS violation and . . . for a violation of the Do Not Call list even if the violations occurred in the same telephone call." *Senior Life Plan.*, 2019 WL 4573703, at *6; *see also Gulden v. Nat'l Sec. Exch. LLC*, No. CV-17-00875-PHX-DJH, 2019 WL 13196395, at *2 (D. Ariz. May 23, 2019) ("[A] plaintiff can recover under both of these provisions even if both violations occurred in a single telephone call.").

the defendant had a prior judgment against it for violating the TCPA or [2] where statutory damages were trivial." *CSOLAR*, 2022 WL 4449362, at *5.

In this case, the Court declines to award Plaintiff treble damages. There are no well-pled allegations regarding prior judgments against Defendant,[15] and the Court finds that awarding $500 in statutory damages per violation is likely "sufficient to deter Defendant from violating the TCPA in the future." *Id.* Accordingly, the Court **AWARDS** Plaintiff statutory damages of (1) $500 per violation of § 227(b)(1) ($6,500 total for the eleven calls and two texts); and (2) $500 per violation of § 227(c)(5) ($5,500 total for the eleven calls). Combined, this results in an award of $12,000 for twenty-four TCPA violations.

### 2. CIPA

"California Penal Code § 637.2 entitles a plaintiff to recover $5,000 per illegally recorded telephone communication." *Fusion Consulting*, 2020 WL 13517511, at *5. Here, Plaintiff has sufficiently alleged one violation—for the December 18, 2023 call with Himmelman—of California Penal Code § 632.7. Consequently, the Court **AWARDS** Plaintiff $5,000 in statutory damages for his CIPA claim.

### B. *Injunctive Relief*

Beyond damages, the TCPA allows litigants to seek injunctive relief. *See* 47 U.S.C. §§ 227(b)(3)(A), (c)(5)(A). While "[i]njunctions authorized by statute do not require a showing of irreparable injury," a plaintiff must still "show[] that a violation of the statute is about to be committed." *Aussieker v. TSHB, LLC*, No. 2:22-CV-01886-DAD-CKD (PS), 2024 WL 379394, at *6 (E.D. Cal. Feb. 1, 2024) (citing *United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 855 (9th Cir. 1995)), *report and recommendation adopted*, 2024 WL 870449 (E.D. Cal. Feb. 29, 2024); *see also PepsiCo*, 238 F. Supp. 2d at 1177 ("A plaintiff is not

---

[15] Attached as exhibits to the Complaint are two cover pages from TCPA complaints filed against CCLC and/or CCF in other jurisdictions. *See* Compl. at 43, 45. But a civil complaint does not, on its own, establish anything beyond the fact that allegations were at some point made. Plaintiff does not discuss how these cases progressed. Indeed, nowhere in his filings does Plaintiff even mention these exhibits, let alone explain why they might bear on this action. The Court therefore declines to grant these exhibits any weight in its evaluation of Plaintiff's Motion.

automatically entitled to an injunction simply because it proves its affirmative claims."). Here, Plaintiff provides no evidence to suggest such future violations are imminent. Instead, his Motion is largely silent on the subject; Plaintiff makes only the conclusory argument that Defendant is a "repeat offender[] and very likely to re-offend." Mot. at 16.

The Court will therefore **DENY** Plaintiff's request for injunctive relief. *See Champion v. Sethi*, No. CV-22-01355-PHX-DGC, 2023 WL 5751468, at *4 (D. Ariz. Sept. 6, 2023) (denying TCPA injunction where plaintiffs presented no evidence that they received additional messages after filing their suit); *Lenhardt v. Democratic Nat'l Comm.*, No. 21-4001-DDC-ADM, 2022 WL 110814, at *6 (D. Kan. Jan. 12, 2022) (declining to issue injunction where "neither plaintiff's Amended Complaint nor any of her other filings show[ed] a likelihood of future TCPA violations"); *Kopff v. Roth*, No. CIV.A.05 798 JDB, 2007 WL 1748918, at *2 (D.D.C. June 15, 2007) (rejecting request for injunctive relief because "plaintiffs ha[d] not alleged or proffered into evidence anything that would indicate . . . that [defendant] ha[d] continued to violate the TCPA").

## CONCLUSION

In light of the foregoing, Plaintiff's Motion (ECF No. 7) is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **GRANTS** the Motion **IN PART** as to Plaintiff's claims for violations of §§ 227(b)(1) and 227(c)(5) of the TCPA and §§ 632.7 and 637.2 of CIPA. Plaintiff's Motion is otherwise **DENIED**. Accordingly, the Court **ORDERS** judgment in favor of Plaintiff and against Defendant Cast Capital Lending Corp. in the amount of $17,000.00. Further, as this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: July 15, 2024

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge